OPINION. Opper, Judge: In 1948 an item of $1,000 was credited to decedent’s capital account with his law firm, but was unreported as taxable income. Respondent treated this as additional ordinary income but petitioners contend that it was a trust fund and should have been dealt with accordingly. The difficulty is that there is no specific evidence to that effect and certainly none that there was a trust fund of which the $1,000 in question or any fraction of it was a part, or which was so earmarked. Since we are unable to find the facts in this connection in petitioners’ favor, the deficiency must be sustained to that extent. The other controversy as to 1948 deals with an arrangement made by decedent for the sale of his stock in the New Sutherland Divide Mining Company. He, along with a number of other owners, agreed to sell a large portion of his holdings in that company. We have found as a fact that decedent as one of the vendors was forced to and actually did agree with the prospective buyer in advance that the proceeds of the sales would not be available to him but would be transmitted to New Sutherland and treated by it as a further investment or advance by the vendors. Decedent could, to be sure, have refused to sell his stock on such terms just as any seller can refuse to sell on credit. In that case tbe transaction would not have taken place, there would have been no profits from the sale even on paper, and no question to be raised before the Tax Court. But we fail to see that, having accepted the offer, decedent was any better off when the stock had been sold than any other seller who accepts an account receivable instead of cash for his property. To a cash basis taxpayer, that is not income until the debt is collected. Consolidated Asphalt Co., 1 B. T. A. 79, 82. And once the contract was made, decedent was effectively disabled from receiving, for the stock, cash or its equivalent or any consideration other than an account receivable. See Shiman v. Commissioner, (C. A. 2) 60 F. 2d 65, 66. Pie was never a free agent as to collecting the proceeds. There is no question that the cash was not actually received by decedent during the tax year, and, under the circumstances, it cannot be said that it was constructively received by him in the sense that it was income available to him and subject to his command but upon which he turned his back. Hal E. Roach, 20 B. T. A. 919; L. M. Fischer, 14 T. C. 792; Harold W. Johnston, 14 T. C. 560; cf. John I. Chipley, 25 B. T. A. 1103; John A. Brander, 3 B. T. A. 231. And certainly the open account on New Sutherland’s books was not so nearly the equivalent of cash that it could be construed as income to a cash basis taxpayer. Nina J. Ennis, 17 T. C. 465; Harold W. Johnston, supra. “So far as we have been able to ascertain, a promise to pay evidenced solely by an open account has never been regarded as income to one reporting on a cash basis by the Bureau of Internal Revenue. Certainly this is true in the absence of any showing that the amount was immediately available to the taxpayer.” John B. Atkins et al., 9 B. T. A. 140, 149, affd. (C. A., D. C.) 36 F. 2d 611. On this issue petitioner is sustained. The final and principal question is whether decedent’s loss in New Sutherland was a capital or ordinary one when it occurred either in 1948 or 1949. Petitioners of course insist that it was deductible in full on the ground that decedent was a professional promoter and the loss was incurred in that business; or that it was a business bad debt deductible for similar reasons; or that the arrangement he made for the sale of the stock constituted a joint venture participated in by decedent and his fellow shareholders and that the ultimate loss was thus the result of a partnership of which decedent was a member. It is apparently conceded that decedent was not engaged in corporate financing as a business. Whether or not he could be considered generally as a “promoter,” which seems highly doubtful in view of the comparatively few separate ventures he actively engaged in over a 60-year period, see Charles G. Berwind, 20 T. C. 808, affirmed per curiam (C. A. 3) 211 F. 2d 575; Fred A. Bihlmaier, 17 T. C. 620; but cf. Weldon D. Smith, 17 T. C. 135, revd. (C. A. 2) 203 F. 2d 310, certiorari denied 346 U. S. 816; Henry E. Sage, 15 T. C. 299; Vincent C. Campbell, 11 T. C. 510, it seems clear lie did not enter the New Sutherland Divide Mining operation in that capacity. Samuel Towers, 24 T. C. 199, affd. (C. A. 2) 247 F. 2d 233. Decedent’s original connection with New Sutherland was as a lawyer, and his subsequent activities all had their origin in this beginning since his status as a stockholder, and that of several of his associates, derived from their receipt of the stock as a legal fee. The subsequent actions were directed to making that fee as lucrative as possible by disposing of the stock on profitable terms. See Charles G. Berwind, 8 T. C. 1112. Unless the “business” aspect of the loss was part of his law business, and we think it clearly was not, Carl Reimers Co., 19 T. C. 1235, affd. (C. A. 2) 211 F. 2d 66, decedent’s advances must hence be viewed as nonbusiness debts. Wheeler v. Commissioner, (C. A. 2) 241 F. 2d 883, affirming per curiam T. C. Memo. 1955-138. Besides this, not only the worthlessness of the debt, but in fact its origin, arose in years when, whatever his past history, decedent was no longer active. If he was ever previously engaged in promotion he was thus not so occupied in 1947, 1948, and 1949 when the claims arose, nor, of course, when they became worthless in the latter year. They are consequently barred from deduction as business debts. Hadwen C. Fuller, 21 T. C. 407; Jan G. J. Boissevain, 17 T. C. 325; Hickerson v. Commissioner, (C. A. 2) 229 F. 2d 631, affirming T. C. Memo. 195A-237. The same result is necessary if the loss is claimed as one incurred in carrying on a business under section 23 (e) (1), I. R. C. 1939. Marian Bourne Elbert, 45 B. T. A. 685, 690. Even if we assume that the vendor stockholders’ group in which decedent was a participant was a joint venture in the sense of sections 182 and 3797 (a) (2), I. R. C. 1939, a point we need not reach, it seems clear that none of the funds advanced by him to New Sutherland were made to such a joint venture. The payments were to the company, were credited to his individual account, and were clearly for the purpose of improving the position of his own stock; and we have so found at petitioners’ request. See Charles G. Berwind, 20 T. C. 808. If they were not contributions to capital, they were at the most loans as to which he was the individual creditor. Even assuming, however, that decedent advanced the funds to a joint venture of which he was a member, there is no evidence of any loss in that undertaking. And, in fact, the indications are to the contrary. Although the supposed “partnership” made no tax return, it apparently liquidated and distributed its assets in about April 1949. At that time the fair market value of the New Sutherland stock was such that all of the interests of the supposed joint ven-turers could have been paid off either in cash or by a return of their stock. If there was a loss in 1949, and this seems to be conceded, it must have occurred later in the year and constituted an individual capital loss of decedent. Beviewed by the Court. Decisions will be entered under Rule 50. Bruce, J., dissents.